**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clara GARY, Defendant–Appellant.**

**No. 91–6346.**

United States Court of Appeals, Tenth Circuit.

July 15, 1993.

Thomas D. McCormick, Oklahoma City, OK, for defendant-appellant.

Kim Taylor, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty. with her on the brief), for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and O'CONNOR, Senior District Judge.**

EARL E. O'CONNOR, Senior District Judge.

Defendant Clara Gary appeals from her convictions for conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The defendant was indicted with six other persons but was tried separately with co-defendant Lenanier Brown. She was convicted by a jury and sentenced to 360 months imprisonment on each count, to run concurrently, and a supervised release term of five years.

The defendant appeals her convictions on three grounds, contending: (1) there was insufficient evidence to support her convictions; (2) the district court erred in admitting hearsay evidence; and (3) the district court misapplied the United States Sentencing Guidelines. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

## I.

■ The defendant's first contention on appeal is that there was insufficient evidence to support her convictions. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and determine whether any reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Garcia*, 994 F.2d 1499, 1504 (10th Cir.1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In applying this standard, we are mindful that "[i]t is 'the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts.' " *Id.* (quoting *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991)). "[W]e cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a

conviction resulting from piling inference on top of inference." *Id.* "We will overturn a jury's conspiracy conviction only if, after review of both direct and circumstantial evidence, we believe no reasonable jury could find defendant guilty beyond a reasonable doubt." *United States v. Young*, 954 F.2d 614, 618 (10th Cir.1992).

■ A conspiracy conviction requires the government to prove " '[1] that two or more persons agreed to violate the law, [2] that the defendant knew at least the essential objectives of the conspiracy, ... [3] that the defendant knowingly and voluntarily became a part of it,' and [4] that the alleged coconspirators were interdependent." *United States v. Evans*, 970 F.2d 663, 668 (10th Cir.1992) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)), *cert. denied*, ── U.S. ──, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). "An express agreement [to distribute] is not required. A tacit agreement is sufficient." *United States v. Hartsfield*, 976 F.2d 1349, 1354 (10th Cir.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1344, 122 L.Ed.2d 727 (1993). "[T]he jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1250 (10th Cir.1991). " 'Mere presence' at the scene of a crime does not, by itself, prove involvement in an existing conspiracy, although such is a 'material factor.' " *United States v. Hamlin*, 986 F.2d 384, 386 (10th Cir.) (quoting *United States v. Esparsen*, 930 F.2d 1461, 1472 (10th Cir.1991), *cert. denied*, ── U.S. ──, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992)), *cert. denied*, ── U.S. ──, 113 S.Ct. 2451, 124 L.Ed.2d 667 (1993).

■ The defendant was indicted along with six other persons for participation in an organization that trafficked cocaine for distribution from southern California to Oklahoma City, Oklahoma. The head of this organization was Raymond Johnson, who had moved

** The Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

to Oklahoma City in 1987 for the specific purpose of dealing cocaine and cocaine base (crack cocaine). Johnson's practice was to bring cocaine from California to Oklahoma City, cook it into crack, and give the crack to distributors who sold it on the street and delivered the proceeds to Johnson or others in his organization. Johnson kept his cocaine and cash in various "stash houses," i.e., Johnson paid the rent and utilities for other members of the organization who held drugs and money for him.

Johnson was arrested in January 1991, and charged with conspiracy to distribute cocaine. Johnson led police to Patsy Cudjo, who was a member of Johnson's organization. Cudjo was responsible for distributing cocaine from Johnson to the street level dealers and for collecting the sale proceeds. The police obtained a warrant to search Cudjo's residence. Cudjo was cooperative, and admitted she had cocaine in the glove compartment of her car. Police seized 20.8 grams of cocaine from her car. Cudjo advised police that she had obtained the cocaine at 333 Northwest 85th Street, the residence of defendant Gary and her co-defendant Lenanier Brown.

The defendant had moved in with co-defendant Brown at 333 Northwest 85th Street in November 1990. The defendant had known both Brown and Raymond Johnson for over thirty years. In December 1990, Johnson began paying Brown to hold cocaine and money for him. The cocaine and cash were kept in a floor safe in one of the bedrooms at the residence. Johnson gave Brown money to cover her living expenses, in amounts ranging from five hundred to a thousand dollars per month.

Cudjo testified that after Johnson's arrest, she picked up $500 from Brown which she "put on [Johnson's] books" at the county jail (meaning that Johnson could use the money for food and other personal expenses at the jail). The defendant was present when Cudjo picked up the $500 from Brown. Johnson testified that when Brown came to visit him in jail, the defendant came with her. Later, Cudjo contacted Brown to arrange to pick up some cocaine that Brown was holding for Johnson. Cudjo intended to sell this cocaine

to pay for Johnson's legal expenses. Brown advised Cudjo that she (Brown) did not have the combination to the safe, so Cudjo got the combination from Johnson and relayed it to Brown. Brown informed Cudjo that she could come over and pick up the cocaine. Cudjo went to 333 Northwest 85th Street, where Brown and the defendant were both present. Brown gave the cocaine to Cudjo in the kitchen, while the defendant remained in the front room of the apartment; the defendant had an unobstructed view of the exchange. Cudjo put the cocaine in the glove compartment of her car, where it remained until seized by the police at the time of her arrest.

Following her arrest, Cudjo agreed to cooperate with police by making a controlled buy at 333 Northwest 85th Street. Cudjo placed a phone call to Brown to set up the deal. The police furnished Cudjo with $3,000 in recorded currency as the buy money and transported her to the residence. Once inside, Cudjo gave Brown the $3,000, and Brown gave Cudjo 61.8 grams of cocaine. While Cudjo and Brown were talking in the kitchen, the defendant came out of her bedroom and told them to keep the noise down or they'd wake the children. Brown told Cudjo that the defendant was going to see Johnson the next day. Brown also stated that she (Brown) would let Johnson know Cudjo had dropped off the money for the cocaine. Cudjo left the residence and turned the cocaine over to police.

The police obtained a search warrant for the residence and executed the warrant later that night. Upon entering the apartment, police found the defendant asleep in the southeast bedroom. On the floor between the defendant's bed and the nightstand, police found a paper sack containing approximately 403 grams of cocaine base and 67 grams of cocaine. There was a strong odor of cocaine emanating from the bag; one officer described the odor as "overwhelming." Between the mattress and box springs of the defendant's bed police found two rolls of currency: one was the $3,000 buy money Cudjo gave to Brown, the other was a roll of $1,870. The defendant testified at trial and admitted that she had placed the money un-

der the mattress herself, at Brown's request. In the defendant's closet, police located a jacket with crack cocaine in the pocket. The defendant admitted that she and Brown shared the jacket. A floor safe, formerly in another bedroom, was located in the garage. The safe had previously been drilled open and there was cocaine in the safe. The bag of cocaine found in the defendant's bedroom contained metal shavings that appeared to have come from a drill bit. The defendant was placed under arrest and taken into custody.

 These facts, viewed in the light most favorable to the jury's verdict, afford ample support for the defendant's convictions. A defendant's connection to the conspiracy need only be slight, provided there is sufficient evidence to establish that connection beyond a reasonable doubt. *Brown*, 943 F.2d at 1250. An agreement to distribute drugs can sometimes "rationally be inferred" from "frequent contacts" among the defendants and from "their joint appearances at transactions and negotiations." *See Esparsen*, 930 F.2d at 1472. We find the evidence is sufficient to sustain the defendant's conviction on the conspiracy count. The evidence is likewise sufficient to support the jury's findings that the defendant possessed with the intent to distribute cocaine and cocaine base and that she distributed cocaine. *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir.) (possession of narcotics can be either actual or constructive; a person has constructive possession of narcotics if he knowingly holds the power to exercise ownership, dominion or control over the narcotics and the premises where the narcotics are found), *cert. denied*, —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992); *United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991) ("A large quantity of cocaine can be sufficient to support a judgment that a defendant intended to distribute the drug."); *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.) (during the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators committed in furtherance of the conspiracy), *cert. denied*, —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992). We find from the record that there was sufficient evidence

for a reasonable jury to determine beyond a reasonable doubt that the defendant was guilty of the offenses of which she was convicted.

## II.

The defendant's next contention on appeal pertains to the admission of statements made by her coconspirator (and co-defendant) Brown. At trial, the defendant objected to testimony from Officer Williams about statements Brown made to Cudjo at the time of their drug transaction. The defendant also objected to testimony from Cudjo about statements Brown made regarding money to be used for Raymond Johnson's legal fees. The defendant further objected to the admission of the statements Brown made to the defendant while the two were being held in a squad car. Each of the defendant's objections was overruled by the trial court. The defendant's position is that the admitted statements were inadmissible hearsay.

 Federal Rule of Evidence 802 prohibits the introduction of hearsay unless it falls within a recognized exception to the hearsay rule. "Statements by coconspirators during the course of and in furtherance of a conspiracy do not fit, however, within the definition of hearsay." *United States v. Powell*, 973 F.2d 885, 891 (10th Cir.1992) (citing Fed. R.Evid. 801(d)(2)(E)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1598, 123 L.Ed.2d 161 (1993). "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). In this circuit,

"a coconspirator's hearsay statement is not admissible unless the trial judge finds three facts by a preponderance of the evidence. The trial judge must determine that the conspiracy existed, that the declarant and the particular defendant were members of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy."

*United States v. Perez,* 959 F.2d 164, 167 (10th Cir.1992) ("*Perez I*") (quoting *United States v. Radeker,* 664 F.2d 242, 243 (10th Cir.1981)), *vacated in part on other grounds, United States v. Perez,* 989 F.2d 1574 (10th Cir.1993) ("*Perez II*"). When a trial court fails to make these findings on the record and this court cannot view admission of the extra-judicial statements as harmless, the case must be remanded for an inquiry in the first instance by the trial court as to whether the Rule 801(d)(2)(E) factors are satisfied. *Perez II,* 989 F.2d at 1582. Only if the trial court finds on remand that the factors have not been established does the defendant receive a new trial. *Id.*

■ The defendant assigns error to the trial court for admitting the statements of coconspirator Brown without first making findings pursuant to Rule 801(d)(2)(E). Even were we to find that the trial court erred in admitting the statements in question, we could not find the error reversible because the declarant, Brown, testified at trial and was subject to cross-examination concerning the statements. *Powell,* 973 F.2d at 892 (citing *United States v. Wolf,* 839 F.2d 1387, 1395–96 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988)). "[T]here is no reversible error where the declarant testifies in court and is subject to cross-examination, regardless of whether opposing counsel actually questions the declarant." *Id.* Hearsay evidence is ordinarily inadmissible "because the absence of an opportunity to cross examine the source of the hearsay information renders it unreliable." *TK–7 Corp. v. Barbouti,* 993 F.2d 722, 732 (10th Cir.1993); *United States v. Cardascia,* 951 F.2d 474, 486 (2nd Cir. 1991) ("Generally [hearsay evidence] is not admissible ... because traditional conditions of admissibility, including that the witness be present at the trial, testify under oath, and be subject to cross-examination, all of which together permit a jury to evaluate the reliability and trustworthiness of a statement, are not present."). But where the declarant testifies at trial and is subject to cross-examination concerning the statement, the dangers of unreliability disappear. Here, the declarant (Brown) testified at trial. The defendant was afforded an opportunity to cross-examine

Brown. As discussed above, the evidence of the defendant's guilt was ample. We find no reversible error in the trial court's admission of the statements in question.

### III.

■ The defendant's final contention on appeal is that the district court misapplied the United States Sentencing Guidelines ("U.S.S.G."). Specifically, the defendant argues that the court erred in computing her criminal history points by failing to count concurrent sentences in prior cases as one sentence under U.S.S.G. § 4A1.2(a)(2).

Section 4A1.2(a)(2) provides that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." Application note 3 to that section interprets the word "related" in this way: "Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." The meaning of the word "related" is a legal issue that we review de novo. *United States v. Villarreal,* 960 F.2d 117, 118 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 166, 121 L.Ed.2d 114 (1992). We review the district court's factual determination that the cases were unrelated under a clearly erroneous standard. *United States v. Kinney,* 915 F.2d 1471, 1472 (10th Cir.1990).

In arguing that the sentences should be treated as one, the sole basis the defendant advances for her position is that some of the prior sentences ran concurrently, and thus, were "imposed in related cases" (in that they were "consolidated for trial or sentencing" under § 4A1.2(a)(2), (3)). We must reject this argument. The fact that the sentences ran concurrently is insufficient to make the prior cases "related." *Villarreal,* 960 F.2d at 119, n. 4 (" 'Consolidation for sentencing' does not arise from the occurrence of sentencing to concurrent sentences."); *United States v. Flores,* 875 F.2d 1110, 1114 (5th Cir.1989) ("Simply because two convictions have concurrent sentences does not mean that the crimes are 'related' under Part A."). Other than the fact that some of her prior

sentences ran concurrently, the defendant points us to no other facts or circumstances which would support a conclusion that the prior cases were related. Indeed, it appears from the presentence report that the prior cases were not related. Although it is true the prior sentences were discharged on the same date, the defendant's criminal activity occurred on separate occasions and was not connected in any way. The report also points out that the prior cases were sentenced on different dates, in different venues. *Cf. United States v. Kinney,* 915 F.2d 1471, 1472 (10th Cir.1990) ("[A] merely concurrent sentence of the same number of years given by a separate jurisdiction at a different date is not consolidation for sentencing as we read the guidelines."). We find no error in the district court's treatment of the defendant's prior sentences in calculating her criminal history score.

AFFIRMED.