19 F.3d 1443
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald G. ANDERSON, Defendant-Appellant.
 No. 93-4008.
 United States Court of Appeals, Tenth Circuit.
 March 23, 1994.
 
 1
 D.C. No. 91-CR-28-S, D. Utah.
 
 
 2
 AFFIRMED.
 
 
 3
 Before BRORBY and EBEL, Circuit Judges, and COOK, Senior District Judge.*
 
 
 4
 ORDER AND JUDGMENT**
 
 
 5
 The defendant-appellant was convicted of seven counts of violating 21 U.S.C. Sec. 841(a)(1), distribution or manufacture of a controlled substance, and one count of violating 18 U.S.C. Sec. 924(c), carrying a firearm during and in relation to a drug trafficking crime. He was sentenced to 210 months imprisonment on Counts 1-7, followed by a 60-month consecutive term of imprisonment on Count 8, and a term of eight years supervised release. He appeals, alleging an evidentiary error at trial, and errors in the calculation of his sentence. Our jurisdiction arises under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742(a) and we affirm.
 
 
 6
 The trial court admitted, over defense objection, exhibits which purported to contain the controlled substances obtained during transactions between Detective Edward J. Lucas and the defendant. The basis of the defense objection was the break in proof as to the Salt Lake City Police Evidence Room log sheets. (R.O.A. v.IV at 161-62). The trial court overruled the objection, finding that an adequate chain of custody had been established. We are guided by the following standard:
 
 
 7
 A district court ruling on the admission of real evidence is reviewed for abuse of discretion. United States v. Cardenas, 864 F.2d 1528, 1530 (10th Cir.), cert. denied, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). We noted in Cardenas that cocaine "is not readily identifiable and is susceptible to alteration by tampering or contamination." Id. at 1531. The proponent of such evidence must lay a foundation establishing the "chain of custody" sufficient "to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." Id. (citation omitted). Flaws in the chain of custody go to the weight of the evidence, but will not preclude admissibility.
 
 
 8
 United States v. Washington, 11 F.3d 1510, 1514 (10th Cir.1993).
 
 
 9
 Detective Lucas worked "deep undercover" posing as a drug dealer. He used two apartments, in one holding himself out as a drug dealer. In the other he stored evidence in his personal safe, met with other officers, wrote reports, and picked up money to be used for drug purchases. He testified that he was involved in between two and three thousand drug purchases while he worked undercover. On June 23, 1990 an individual named "Hawk" introduced Detective Lucas to defendant-appellant, who went by the name "Domino." The three went to an apartment complex. Appellant sold Detective Lucas an ounce of cocaine base. Detective Lucas and appellant met again on various occasions and engaged in other drug transactions, which formed the basis for the indictment in this case.
 
 
 10
 During his time undercover, Detective Lucas took "field notes" in which he recorded addresses, names, quantities and prices involving a particular transaction. Detective Lucas would--as often as possible--return to his "safe" apartment immediately after a drug purchase to mark and secure the drugs. Each purchase was put in a plastic bag or container. He would then tape it, initial it and seal it. Then he placed the container in a manilla envelope. On the envelope he wrote the case number, the names of individuals involved, his own name, the name of any other involved officer, and the location and time of the occurrence. After the drugs were packaged, he placed them in his safe, to which only he and one other officer (Detective Evans) had the combination. Detective Evans would pick up the drugs from the safe and leave money for Lucas for further purchases.
 
 
 11
 Sometimes Detective Lucas made several purchases before returning to the apartment, but he always kept each purchase separate. Detective Lucas testified that he would take the evidence to the Metro Narcotics Office where he filled out the evidence paperwork. He then took the evidence to the Salt Lake City Police Evidence Room, where it was logged in. (If evidence was obtained after the Evidence Room closed for the day, Lucas would secure it in the Metro Office safe. If obtained on a weekend, he would usually leave the drugs in the apartment safe until transport was possible.) It was not the province of the Evidence Room to examine the evidence, but merely to store it. A person from the Utah State Crime Lab would sign out one of the packages, transport it to the Crime Lab for analysis and then return it upon the completion of analysis.
 
 
 12
 David Murdock, a chemist who works at the state crime lab, testified that he and two other employees did the drug analysis. They initialed the exhibits, and had a set procedure for moving, analyzing and returning evidence. One item, Exhibit 5 below, was brought in for analysis on September 12, 1991 and picked up from the lab on February 13, 1992. The other exhibits which were analyzed came into the lab on November 9, 1991 and were analyzed on November 10, 1992. Mr. Murdock did not have copies of the Evidence Room log sheets.
 
 
 13
 Upon review, we conclude that the trial court did not abuse its discretion in admitting the evidence in question. Even appellant concedes that the evidence demonstrates, at most, that "[u]nder these circumstances, it is not unreasonable to suggest that [Lucas] might confuse the substances and transactions." (Appellant's Reply Brief at 1) (emphasis added). Further, that "[t]his much handling creates a real possibility of loss, alteration, or confusion among substances." Id. at 2 (emphasis added). The test, of course, regarding evidence which is not readily identifiable and is susceptible to alteration by tampering or contamination, is a foundation entailing a chain of custody "with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir.) cert. denied, 491 U.S. 909 (1989). A mere possibility that evidence might have been tampered with demonstrates that it is improbable that such tampering has taken place. The trial court's admission of the evidence shall not be disturbed.
 
 
 14
 As to sentencing, the Presentence Report (PSR) considered defendant's prior convictions in calculating criminal history. One included was a misdemeanor conviction of May 20, 1985, regarding which the writer stated that he could not confirm that defendant was represented by an attorney at the time he entered his plea of nolo contendere. The defendant was also given two points each for three separate assaults upon his girlfriend. He was found to have 13 criminal history points, placing him in category VI. Appellant's attorney filed no objection to the PSR pertinent to this appeal. The court found appellant's offense level was 32 and his criminal history was category VI for a range of 210-262 months. The court sentenced to the minimum for Counts 1-7, followed by a consecutive 60 months on Count 8.
 
 
 15
 The Sentencing Guidelines instruct the district court to determine the defendant's criminal history. U.S.S.G. Sec. 1B1.1(f). As pertinent to this appeal, the Guidelines further direct that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence" for purposes of the criminal history. U.S.S.G. Sec. 4A1.2(a)(2). Application Note 3 to Sec. 4A1.2(a)(2) states that "[c]ases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." In the present case, the PSR noted that on September 19, 1988, defendant committed an assault upon his girlfriend and was charged in Seattle Municipal Court. On April 6, 1989, he assaulted her again. It was further noted that defendant appeared for sentencing on these two charges on June 7, 1989. He was sentenced to 365 days in jail, 90 days of which was suspended in both cases. In addition, on January 20, 1989, defendant committed trespass and assault, again against his girlfriend. On July 9, 1989, he was sentenced to 365 days in jail for that offense.
 
 
 16
 The defendant did not object to this aspect of the Presentence Report, but now urges on appeal that the district court should have considered the three offenses as "related" for purposes of the Sentencing Guidelines. Because there was no objection below, we review for plain error. United States v. Alessandroni, 982 F.2d 419, 420 (10th Cir.1992). Ordinarily, we review the district court's factual determination that the cases were unrelated under a clearly erroneous standard. United States v. Gary, 999 F.2d 474, 479 (10th Cir.), cert. denied, 114 S.Ct. 259 (1993). Regarding the two assault charges, defendant urges that they are related despite occurring on separate occasions, because "they were part of a single course of action, ... domestic violence committed upon Mr. Anderson's girlfriend." (Appellant's Brief at 16-17). Based upon the fact that the sentencing for the two offenses took place on the same day, appellant's brief surmises that the two cases were consolidated for sentencing purposes. (Id. at 17).
 
 
 17
 We will address the three prongs of Application Note 3 in turn. Here, the two assault offenses were separated by over six months, were separated by an intervening arrest, and involved separate criminal acts. It therefore follows that they did not occur on a "single occasion." Cf. United States v. Aubrey, 986 F.2d 14 (2d Cir.) cert. denied, 113 S.Ct. 2969 (1993). We further reject defendant's argument that a "single scheme or plan" of domestic violence against his girlfriend is implicated by the assault charges. No evidence is presented in the record that the defendant "planned" two separate assaults six months apart upon his girlfriend. At a sufficiently high level of generalization, separate acts of forgery and bank robbery could be said to form a single scheme of "wrongdoing", but such an interpretation would render useless the factors set forth in Application Note 3. Finally, as noted earlier, the fact that the sentencing for the two assaults took place on the same date leads appellant to argue that a consolidation took place, thus meeting the third prong of Application Note 3. Our review of the PSR indicates that the individual case numbers were not consolidated and that two separate sentences were issued. The PSR does not indicate whether the sentences were to run concurrently, but even if they were, this is insufficient to make the cases "related." United States v. Gary, 999 F.2d 474, 479 (10th Cir.), cert. denied, 114 S.Ct. 259 (1993).
 
 
 18
 As for the January 20, 1989 trespass and assault, defendant argues that it is related to the other two offenses factually, involved the same court, the same charge, the same victim, the same course of action and essentially the same sentence. (See Appellant's Reply Brief at 3-4). Again, we disagree that this crime can be deemed "related" for Guideline purposes. The trespass was separated from both of the other crimes by a period of months, was not part of a single scheme or plan, and the defendant was tried, convicted and sentenced in proceedings wholly independent of the other offenses. Therefore, we do not conclude that the trial court committed plain error in concluding that the three offenses were not related for Sentencing Guidelines purposes.
 
 
 19
 As a third ground for reversal, defendant contends that the trial court erred by including a misdemeanor conviction of May 10, 1985 in the calculation of defendant's criminal history score. Again there was no objection at the trial court level, but we may review for plain error. The PSR contains the following entry below notation of the conviction:
 
 
 20
 According to court records, the defendant pleaded nolo contendere to the above charge. The issue of legal representation could not be confirmed, but since 1973 the California law provides that all defendants accused of a misdemeanor must either have legal representation or intelligently waive such right to the Court's satisfaction.
 
 
 21
 Convictions which have been found constitutionally invalid may not be counted in the criminal history score. Sec. 4A1.2, Application Note 6. In this case, after the government established the fact of the prior conviction, the defendant had the burden of showing that the conviction was constitutionally invalid. United States v. Unger, 915 F.2d 759, 761 (1st Cir.1990), cert. denied, 498 U.S. 1104 (1991); United States v. Newman, 912 F.2d 1119, 1122 (9th Cir.1990); United States v. Boyer, 931 F.2d 1201, 1205-05 (7th Cir.), cert. denied, 112 S.Ct. 209 (1991). See United States v. Wicks, 995 F.2d 964, 978 (10th Cir.) cert. denied, 114 S.Ct. 482 (1993) (holding that, under the Armed Career Criminal Act, "once the government has established the fact of a prior conviction based on a guilty plea, the defendant has the entire burden of [proving] the invalidity of the conviction"). See also, Parke v. Raley, 113 S.Ct. 517, 523 (1992) (on collateral attack, final judgments have a "presumption of regularity"). We see no basis for altering this established rule of law with respect to the issue of waiver of counsel, particularly in view of the factual statement in the PSR, not objected to below, that California law at the time required either legal representation or intelligent waiver. Cf. United States v. Dickerson, 901 F.2d 579, 583 (7th Cir.1990) (examination of Illinois law applicable to acceptance of guilty pleas in connection with appellant's claim of invalidity).[1] Thus, we do not conclude that the sentencing court committed plain error in its determination.
 
 
 22
 The convictions and sentence below are AFFIRMED.
 
 
 
 *
 The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 We are aware that the Supreme Court presently has before it the issue of whether uncounseled misdemeanor convictions may be counted in calculating a defendant's criminal history score. United States v. Nichols, 979 F.2d 402 (6th Cir.1992), cert. granted in part, 114 S.Ct. 39 (1993). However, in view of the factual posture of this appeal, it does not appear that the Supreme Court's resolution of the issue would affect our conclusion