Ronald G. ANDERSON,
Petitioner/Defendant,

v.

UNITED STATES of America,
Respondent/Plaintiff.

No. 96–C–1070–S.

United States District Court,
D.Utah,
Central Division.

April 2, 1999.

Bruce C. Lubeck, Asst.U.S.Atty., Salt Lake City, Utah, for plaintiff.

Michael W. Jaenish, Salt Lake City, Utah, for defendant.

## ORDER

SAM, Chief Judge.

Before the court is a document entitled "Petitioner's Reply to the Report and Recommendation of Magistrate Alba" filed by petitioner Ronald G. Anderson. The court has reviewed Anderson's objections to the Report and Recommendation, signed by the magistrate judge on February 18, 1999, despite their untimeliness. After considering the matter *de novo*, the court concludes the Report and Recommendation is correct in every material respect and hereby adopts it as the court's own opinion. Accordingly, defendant's petition pursuant to 28 U.S.C. § 2255 is dismissed.

## REPORT & RECOMMENDATION

ALBA, United States Magistrate Judge.

Petitioner Ronald G. Anderson, confined at the Federal Correctional Institute at Florence Colorado, filed a petition to set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on December 23, 1996.[1] The case was assigned to United States District Judge David Sam, who subsequently referred it to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). (File Entry # 3).

### *BACKGROUND*

On January 3, 1991, petitioner was charged with selling, or aiding and abet-ting in the sale of, cocaine base and cocaine to an undercover police officer. (File Entry # 6, Attachment A; Document # 1, Criminal File 91–CR–28, Indictment). The total amount of cocaine base involved in counts 1–4 and Count 7 was 91 grams. (*Id.*). In the final transaction, as charged in Counts 7 and 8, petitioner showed the officer a gun just before petitioner demonstrated how to "cook" or manufacture the cocaine base from cocaine hydrochloride. Petitioner carried the gun in a pack just before he began the manufacture process, showed it to the officer, and then set it on a table about five feet away during the manufacture process. (File Entry # 6, Attachment C, Trial Transcript, November 16, 1992, pp. 75–79).

In November 1992, petitioner was convicted of seven counts of violating 21 U.S.C. § 841(a)(1), distribution or manufacture of a controlled substance, and one count of violating 18 U.S.C. § 924(c), carrying a firearm during and in relation to a drug trafficking crime. The first four counts of the indictment charged distribution of cocaine base and Count 7 charged manufacture of cocaine base. Counts 5 and 6 charged distribution of cocaine. On January 12, 1993, petitioner was sentenced to 210 months imprisonment on Counts 1–7, followed by a 60–month consecutive term of imprisonment on Count 8, and a term of eight years supervised release. *United States v. Anderson,* 19 F.3d 1443, 1994 WL 107856 (10th Cir.1994) (unpublished). (File Entry # 6, Attachment A, Indictment).

Petitioner directly appealed his sentence and conviction to the Court of Appeals for the Tenth Circuit. Petitioner challenged evidentiary errors at trial and errors in the calculation of his sentence. His conviction and sentence were affirmed. *United States v. Anderson,* 19 F.3d 1443, 1994 WL 107856 (10th Cir.1994).

---

1. As an initial note, this section 2255 motion is petitioner's first attempt seeking collateral review of his conviction and sentence.

Petitioner filed the current motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255 on December 23, 1996. (File Entry # 1). On January 9, 1997, the magistrate judge ordered the United States Attorney to respond to the motion. (File Entry # 5). The government filed its response on January 27, 1997. (File Entry # 6). Petitioner filed his reply to the response on February 14, 1997. (File Entry # 7).

On October 14, 1997, this court held a hearing during which the court excused Mr. Besendorfer as counsel for petitioner because of allegations of ineffective assistance of counsel made by petitioner in his reply.[2] (File Entry # 14.) The court appointed new counsel for petitioner. On March 25, 1998, the court held an evidentiary hearing regarding the claims made by petitioner. (File Entry # 20).

## DISCUSSION

### I. Presentence Report.

■ Petitioner claims that the trial court failed to ask petitioner if he had read the presentence report and discussed it with his attorney. First, a petitioner who fails to present an issue on direct appeal is barred from raising the issue in a section 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ Petitioner claims that whether he should be "procedurally barred from raising this claim on collateral review should depend on whether he knowingly, voluntarily, and intelligently waived his right to read and to discuss the PSI with his attorney." This statement fails to show any reason why he did not bring an appeal on the issue he raises. Further, he has not shown any prejudice or a fundamental miscarriage of justice in this case. Accordingly, this claim is procedurally barred and need not be considered by this court.

■ Second, even if this claim were not procedurally barred, it must fail because petitioner has failed to show any prejudice resulting from the alleged failure by the trial court to inquire as to whether petitioner had read the report and discussed it with his attorney.[3] Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure provides that the court must verify that the defendant and counsel have read the presentence report. If this is not done, the petitioner must show that he suffered some prejudice or the case will not be remanded for resentencing. *United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995); *United States v. Rangel–Arreola*, 991 F.2d 1519, 1526 (10th Cir.1993).

Petitioner claims that he was harmed because he would have received a lesser sentence had he known about how the guidelines applied in his case. However, this vague statement, standing alone, does not show any prejudice. Petitioner offers no evidence showing that he would have received a lower sentence. Further, the Tenth Circuit considered the presentence report in relation to the sentencing guidelines in petitioner's appeal and determined that no error had occurred. *Anderson*, 19 F.3d 1443. Thus, petitioner's argument is without merit.

---

**2.** The magistrate judge had previously appointed Mr. Besendorfer as counsel because he represented petitioner in the criminal case.

**3.** Petitioner claims he did not review the presentence report prior to sentencing. Mr. Besendorfer, petitioner's attorney, represented to the court at sentencing that he had reviewed the presentence report and had "also reviewed it in substance with Mr. Anderson." (Trial Transcript, January 12, 1993, p. 2). As discussed below, petitioner has failed to show any prejudice. Thus, this court need not resolve the factual dispute as to whether petitioner actually received a copy of the presentence report and discussed it with his attorney before sentencing.

## II. Cocaine Base Calculation.

▮ Petitioner next claims that his sentence was improper because he was sentenced for "crack" penalties when the indictment charged "cocaine base" and not "crack."

Petitioner claims that the indictment charged him with a general cocaine base (hydroxylion) rather than a crack cocaine base (sodium bicarbonate). He asserts that the only type of cocaine base that can receive the sentencing enhancement is crack cocaine base (sodium bicarbonate). Thus, petitioner claims that his sentence is illegal.

However, the guidelines in place when petitioner was sentenced in January 1993 do not limit crack as the only form of cocaine base to receive the enhanced sentence. It was not until November 1993 that the Sentencing Commission amended the Guidelines to include the following definition of cocaine base: " 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1.

The guidelines in effect when petitioner was sentenced on January 12, 1993, set forth base offense levels for varying amounts of "cocaine base." The guidelines did not stipulate that crack was the only form of cocaine base that would receive the enhanced sentence. *United States v. Rodriguez*, 980 F.2d 1375, 1378 (11th Cir.1992) (the term cocaine base is not limited to crack cocaine); *United States v. Jackson*, 968 F.2d 158, 161 (2nd Cir.) (forms of cocaine base not pure enough to be crack still fall within Guidelines for enhanced sentence), *cert. denied*, 506 U.S. 1024, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). The Tenth Circuit addressed this issue after petitioner's sentencing but before the Sentencing Commission limited the enhanced sentence of "cocaine base" to crack. *United States v. Angulo–Lopez*, 7 F.3d 1506, 1511 (10th Cir.1993), *cert. denied*, 511 U.S. 1041, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994). In this case, the court found that a defendant could be sentenced under the enhanced sentencing provision for "cocaine base" even though he was found to have possessed a substance other than crack. *Id.*

In the present case, petitioner was charged with and found guilty of distribution of cocaine base. He was properly sentenced under the guidelines for distribution of cocaine base. The government only had to show that the substance in question was cocaine base. It was not required to prove it was crack in order for petitioner to receive the enhanced sentence. Thus, petitioner's argument fails.[4]

## III. Use and Carry.

18 U.S.C. § 924(c)(1) imposes a five-year prison term on anyone who, "during and in relation to any crime of violence or drug trafficking crime .... uses or carries a firearm." If the court finds facts supporting either "use" or "carry" in relation to a drug trafficking crime under section 924(c)(1), petitioner's conviction must be sustained. *Bailey v. United States*, 516 U.S. 137, 138, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991).

### A. "Uses" a Firearm.

In *Bailey*, the Supreme Court held that in order to convict a defendant for "use" of a firearm under 18 U.S.C. § 924(c), there must be *active employment* of the firearm by the defendant. *Bailey*, 516 U.S. at 142, 116 S.Ct. 501.[5] Active employment in-

---

**4.** To the extent petitioner is attempting to allege that Amendment 487 (the amendment more narrowly defining cocaine base as crack) should be retroactive, the Tenth Circuit has determined otherwise. *United States v.*

*Kissick*, 69 F.3d 1048, 1053 (10th Cir.1995) (petitioner not entitled to retroactive application of Amendment 487).

**5.** The Tenth Circuit has determined that *Bailey* applies retroactively to cases on collateral

cludes brandishing or displaying a weapon. *Id.* at 148, 116 S.Ct. 501. Likewise, "a reference to the firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.* An offender's reference to a firearm in his possession could satisfy "use" under section 924(c)(1). *Id.* In contrast, merely possessing or "storing" a firearm within proximity to drugs is not active employment. *Id.* at 149, 116 S.Ct. 501 ("inert presence of a firearm, without more, is not enough to trigger § 924(c).").

 Here, the district court instructed the jury that "a firearm is used … when a defendant had ready access to it, and the firearm was an integral part of the criminal undertaking, and its availability increased the likelihood that the criminal undertaking would succeed." (Trial Transcript, November 17, 1992, Jury Instruction # 33, p. 75). "A defendant has ready access to a firearm if it was available to the defendant in the vicinity where a drug trafficking offense took place." (*Id.*). The instruction further states:

> It is not necessary to show that the defendant fired the weapon or even showed the weapon during the alleged drug trafficking crime. Nor is it necessary that the defendant's sole purpose in carrying or using the firearm is to facilitate the drug trafficking crime. It is sufficient if the proof establishes that the firearm was a means of safeguarding and facilitating the possession of the controlled substance with the intent to distribute it. If the government has shown beyond a reasonable doubt a set of circumstances in which the presence of the firearm suggests that the one possessing it intended to have it avail-

able for possible use during a drug trafficking crime, if a contingency arose, as for example, to protect himself or make an escape possible, the firearm has been "used" within the meaning of the statute.

(*Id.* at pp. 74–75).

Petitioner argues that this modification of the law relative to the circumstances constituting "use" of a firearm in relation to a drug trafficking offense effected by the Supreme Court in *Bailey* makes this jury instruction improper. This court agrees with this argument. The jury instructions do not comport completely with *Bailey's* definition of use as "active employment." *See Bailey,* 516 U.S. at 148–49, 116 S.Ct. 501. Further, it is not totally clear from the evidence presented at trial that a conviction could be supported on the basis of "use" as defined by *Bailey.* The evidence shows that petitioner was carrying the weapon in a zipped bag. He displayed the weapon outside the home, but only after the undercover officer asked what was in the bag and asked to see the weapon. When the petitioner and the undercover officer entered the home to "cook" the cocaine, petitioner kept the weapon zipped in the bag, some four to five feet away from where petitioner was manufacturing the cocaine.

The evidence shows that the actions of the petitioner could be considered mere possession or storage of the weapon near the site of a drug crime. On the other hand, because petitioner "disclosed or mentioned" the gun, even at the prompting of the undercover officer, it could be deemed to be "actively employed," rather than merely stored, pursuant to *Bailey.* *Id.* at 149, 116 S.Ct. 501 ("if the gun is not

---

review because *Bailey* established a new nonconstitutional rule of substantive law that may produce different results than dictated by prior law. *United States v. Barnhardt,* 93 F.3d 706, 708–09 (10th Cir.1996). Even though petitioner failed to raise a Bailey-type argument at trial or on direct review, he has

shown cause and prejudice because Bailey overturned a widespread practice to which the Supreme Court had not spoken, but which a nearly unanimous body of lower courts had expressly approved. *See United States v. Holland,* 116 F.3d 1353, 1356 (10th Cir.1997).

disclosed or mentioned by the offender, it is not actively employed").

## B. "Carries" a Firearm.

■ As stated above, if this court finds either use or carry, petitioner's conviction must be sustained. Even if the jury could not have found petitioner "used" the firearm pursuant to *Bailey*, it could have found petitioner "carried" the firearm.[6] Petitioner was charged in the alternative with both using and carrying a firearm.[7]

First, the jury instructions regarding "carry" were likely proper, even under the definition of "carry" after *Bailey*. *See United States v. Holland*, 116 F.3d 1353, 1357 n. 2 (10th Cir.1997). The jury was instructed in a separate jury instruction from the "use" instructions that "[t]o show that the defendant 'carried' a firearm during or in relation to a drug trafficking crime, the government need not show that the defendant actually carried the firearm on his person. It is sufficient if the government shows that the defendant transported or concealed the firearm in a vehicle and it is accessible and that he had possession of the firearm such that he had the ability, authority, power, and intention to exercise dominion or control over it." (November 17, 1992, Trial Transcript, p. 75, Jury Instruction # 34).

Second, even if the jury instructions regarding "carry" were not proper in light of *Bailey*, under *Holland*, this court looks at the "instructions given and the nature of the evidence to determine whether the jury's verdict is the 'functional equivalent' of finding a 'carry violation.' " *Holland*, 116 F.3d at 1359 n. 4.

This court concludes that based on the instructions given and the evidence, the jury could have made all the findings required to sustain the conviction under the "carry" prong. Here, the instructions did not blur the "distinction between use and carry." *United States v. Gutierrez*, 139 F.3d 913, 1998 WL 60411 (10th Cir.1998) (unpublished). The instructions did not define use and carry as if they were synonymous. *See United States v. Simpson*, 94 F.3d 1373, 1379 (10th Cir.) (when instruction did not separately define "carry," "the jury could have erroneously decided that the terms 'use' and 'carry' were redundant"), *cert. denied*, 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996).

■ "A conviction under the 'carry' prong of section 924(c)(1) requires possession of the firearm through dominion and control, and transportation or movement of the weapon," as well as proof that the firearm was carried " 'during and in relation to' a drug trafficking offense." *United States v. Richardson*, 86 F.3d 1537, 1548 (10th Cir.), *cert. denied*, 519 U.S. 1030, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 1917, 141 L.Ed.2d 111 (1998) (" 'carry' implies personal agency and some degree of possession"). "Carrying" is not limited to carrying a firearm on a person. *Muscarello*, 118 S.Ct. at 1913–14.

In our case, the jury was instructed on the possession and transportation/movement elements. *See Gutierrez*, 139 F.3d 913. The trial transcript shows the petitioner admitted he was carrying a bag that contained the gun, that he showed the gun to the officer, and then set the gun next to where he was processing the drugs. Thus, a jury could reasonably find that petitioner possessed the gun and moved or transport-

---

**6.** The Supreme Court has recently refined the definition of "carry" in *Muscarello v. U.S.*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998).

**7.** Count 7 of the indictment charged petitioner with using and carrying a firearm and the jury was instructed they could find guilt if petitioner either used or carried the firearm.

Despite petitioner's assertions to the contrary, a statute denouncing conduct in the disjunctive may be charged in the conjunctive and later proven at trial in the disjunctive. *United States v. Simpson*, 94 F.3d 1373, 1378 n. 2 (10th Cir.1996); *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991).

ed the gun. Accordingly, the jury verdict is the "functional equivalent" of finding a "carry violation." *Holland,* 116 F.3d at 1359 n. 4.

■ Further, the jury could have also found that the weapon was carried "in relation to" the drug crime.[8] "In relation to" means, at a minimum, that the gun must have facilitated, or have the potential of facilitating the drug trafficking offense. A gun is not related to a drug trafficking crime if its presence is merely the result of an accident or a coincidence. *Smith v. United States,* 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). The evidence shows no indication that petitioner carried the weapon as a result of accident or coincidence. Based upon the evidence, the jury could have found that the weapon's presence had the potential of facilitating the drug crime.

Accordingly, the jury instructions and the evidence were sufficient to sustain the section 924(c)(1) conviction.[9]

## IV. Manufacturing Statute.

■ Petitioner asserts that 21 U.S.C. § 841(a)(1) is not a "manufacturing" statute and thus, his conviction on the manufacturing count should be set aside. However, section 841(a)(1) makes it a crime "to manufacture, distribute, or dispense or possess with intent to manufacture and distribute or dispense a controlled substance." The jury was properly instructed pursuant to the charge and the wording of the statute. (November 17, 1992, Trial Transcript, p. 71, Jury Instruction # 28). Additionally, 21 U.S.C. § 802(15) defines manufacture and the jury instructions follow this definition: "The word 'manufacture' means the production, preparation, propagation, compounding or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis." (*Id.* at p. 72, Jury Instruction # 30). Petitioner's conduct as described at trial clearly fits within the definition of manufacturing. (File Entry # 6, Attachment C, Trial Transcript pp. 75–79).

Further, despite petitioner's assertions to the contrary, the distribution and possession with intent to manufacture under section 841(a)(1) have all been upheld as constitutional based upon the commerce clause. *United States v. Beuckelaere,* 91 F.3d 781, 785 (6th Cir.1996); *United States*

---

8. The jury was instructed:
 [A] firearm is used or carried "during" and "in relation to" a drug trafficking crime if the firearm played an integral role in the drug trafficking crime, such as being intended for use if a contingency arose.
 For example, the defendant had an opportunity to display or discharge the firearm to protect himself or intimidate others, or make an escape possible, regardless of whether or not the firearm was actually used to protect the defendant or intimidate others to make an escape possible, and regardless of whether or not the firearm was displayed or discharged. You may consider whether the firearm had utility in protecting illicit drugs or cash or increased the likelihood that the criminal undertaking would succeed. The firearm must have a role in or facilitate, or have the potential to facilitate, the drug trafficking crime.
 If the firearm was inadvertently used or carried, it was not used or carried in relation to a drug trafficking crime.

(November 17, 1992, Trial Transcript p. 76–77, Jury Instruction # 36).

9. Petitioner claims the government conceded at sentencing that Count 7 was a form of sentencing entrapment. However, a review of the sentencing transcript shows otherwise. The government states that even if the court found it was improper for the undercover officer to ask petitioner to "cook" the cocaine, petitioner's sentence would not change under the guidelines if the amount of cocaine base at issue in count 7 (19 grams) were deleted. Level 32 of the Guidelines ranges from 50 to 150 grams of cocaine base and petitioner was found to have 91 grams total. Further, petitioner has failed to present facts sufficient to show sentencing entrapment, nor did he raise the issue on appeal, and is thus procedurally barred. *See United States v. Lacey,* 86 F.3d 956, 962–66 (10th Cir.1996), *cert. denied,* 519 U.S. 944, 117 S.Ct. 331, 136 L.Ed.2d 244 (1996).

*v. Leshuk,* 65 F.3d 1105, 1112 (4th Cir. 1995); *United States v. Kremetis,* 903 F.Supp. 250, 252 (D.N.H.1995).

## V. "Knowingly and Intentionally."

■ Petitioner claims that the indictment excludes the phrase "knowingly and intentionally" in connection with the claim that he "did use and carry a firearm ... in violation of Title 18 U.S.C. 924(c)." (Criminal File 91–CR–28, Document # 1, Indictment, p. 4). The government concedes that the indictment fails to claim petitioner used or carried the firearm "knowingly and intentionally." (March 25, 1998, Transcript, p. 24). However, the statutory terms "using or carrying" and "during and in relation to" necessarily include a knowledge requirement. *United States v. Gutierrez,* 978 F.2d 1463, 1467 (7th Cir.1992) (indictment need not state "knowledge" requirement in section 924(c) offense).

Further, Jury Instruction # 32 required that the jury find that petitioner "had knowledge that what he was carrying or using was a firearm." (November 17, 1992, Trial Transcript, p. 73, Jury Instruction # 32). Additionally, Jury Instruction # 35 provides:

> the government must prove beyond a reasonable doubt ... that the defendant had knowledge that what he was carrying or using was a firearm as that term is generally used. An act is done knowingly if done purposely and voluntarily, as opposed to mistakenly or accidentally. In order for the government to satisfy this element, it must prove that the defendant knew what he was doing. It is not necessary, however, for the government to prove that the defendant knew he was violating any particular law.

(*Id.* at p. 75–76). Pursuant to these instructions, the jury must have found petitioner "used" or "carried" the gun knowingly. *See United States v. Pemberton,* 121 F.3d 1157, 1169 (8th Cir.1997) (although

indictment omitted allegation, jury instructions were correct). Thus, petitioner has failed to show he was prejudiced in any way by the omission in the indictment. *See United States v. Gooch,* 120 F.3d 78, 80 (7th Cir.1997) (defendant failed to show indictment caused any prejudice).[10]

## VI. Ineffective Assistance of Counsel Claims.

■ As an initial matter, the Court must address the issue of whether there is a procedural bar to petitioner's section 2255 motion where petitioner failed to raise the issue of ineffective assistance of counsel on direct appeal. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Khan,* 835 F.2d 749 (10th Cir.1987), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 915 (1988). " 'The preferred avenue for challenging the effectiveness of counsel in federal criminal trial is by collateral attack under 28 U.S.C. Section 2255.' " *United States v. Kay,* 961 F.2d 1505, 1508 (10th Cir.1992) (quoting *Beaulieu v. United States,* 930 F.2d 805, 806 (10th Cir.1991)). This is because "ineffective claims frequently require consideration of evidence not contained in the record on appeal." *Beaulieu,* 930 F.2d at 807. Thus, although petitioner failed to raise the claim of ineffective assistance of counsel on direct appeal, this Court finds that petitioner's Section 2255 motion is not procedurally barred and, accordingly, is subject to collateral review.

■ In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate "his attorney's performance fell below an objective standard of reasonableness" and that "but for counsel's deficiencies a reasonable probability exists the proceedings would have resulted in a different verdict." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, peti-

---

**10.** Further, Rule 12(b) of the Federal Rules of Criminal Procedure provides that petitioner should have objected to the indictment prior

to trial. *See United States v. Freeman,* 813 F.2d 303, 304 (10th Cir.1987).

tioner must show: (1) that his counsels' performance was deficient; and (2) that the deficient performance prejudiced his defense to the extent that the outcome would have been different.

Additionally, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 669, 104 S.Ct. 2052. Further, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

### A. Presentence Report.

Petitioner claims his counsel was ineffective for failing to explain and discuss with petitioner the presentence report. As discussed above, petitioner has failed to show any prejudice resulting from the alleged failure, such that the outcome of the trial would have been different. *See United States v. Archer,* 70 F.3d 1149, 1151 (10th Cir.1995); *United States v. Rangel–Arreola,* 991 F.2d 1519, 1526 (10th Cir. 1993).

Petitioner's vague statement that he would have received a lesser sentence had he known about how the guidelines applied in his case fails to show sufficient prejudice. Further, the Tenth Circuit considered the presentence report in relation to the sentencing guidelines in petitioner's appeal and determined that no error had occurred. *Anderson,* 19 F.3d 1443, 1994 WL 107856. Thus, petitioner's argument is without merit.

### B. Defective Indictment

Petitioner next claims that his counsel was ineffective for failing to object to the defective indictment prior to trial and again on appeal. Petitioner claims the indictment was defective because it failed to allege petitioner "knowingly and intentionally" used or carried a firearm in violation of section 924(c). However, even if counsel improperly failed to raise the "defect" in the indictment prior to trial or on appeal, as discussed above, petitioner has shown no prejudice and has failed to show that the outcome of his trial would have been different had his counsel objected.

### C. Cocaine Base Calculation.

Petitioner asserts that his counsel was ineffective for failing to challenge his sentence on appeal because petitioner was improperly sentenced for "crack" penalties when the indictment charged "cocaine base" and not "crack."

As discussed above, the guidelines in place when petitioner was sentenced in January 1993 do not limit crack as the only form of cocaine base to receive the enhanced sentence. It was not until November 1993 that the Sentencing Commission amended the guidelines to limit the enhanced penalty to crack. U.S.S.G. § 2D1.1; *United States v. Angulo–Lopez,* 7 F.3d 1506, 1511 (10th Cir.1993), *cert. denied,* 511 U.S. 1041, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994) (petitioner could be sentenced under the enhanced sentencing provision for "cocaine base" even though he was found to have possessed a substance other than crack); *United States v. Rodriguez,* 980 F.2d 1375, 1378 (11th Cir. 1992) (the term cocaine base is not limited to cocaine); *United States v. Jackson,* 968 F.2d 158, 161 (2nd Cir.1992) (forms of cocaine base not pure enough to be crack still fall within Guidelines for enhanced sentence).

In the present case, petitioner was charged with and found guilty of distribution of cocaine base. He was properly sentenced under the guidelines for distribution of cocaine base. Thus, petitioner's counsel was not ineffective for failing to raise this issue at trial or on appeal.

*CONCLUSION*

Based upon the above, petitioner's section 2255 motion lacks merit and should be dismissed. Accordingly, **IT IS HEREBY RECOMMENDED** that the petition pursuant to 28 U.S.C. § 2255 be **denied.** Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent review.