**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mauricio CAMACHO, Defendant–Appellant.**

**No. 92–4442.**

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1994.

---

Douglas R. Beam, Melbourne, FL, for appellant.

Linda Collins Hertz, Lisa T. Rubio, Asst. U.S. Attys., Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, COX, Circuit Judge, and YOUNG *, Senior District Judge.

COX, Circuit Judge:

## INTRODUCTION

Mauricio Camacho was convicted of possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and importing cocaine into the United States in violation of 21 U.S.C. § 952(a). Camacho appeals, challenging the sentence imposed by the district court and the district court's denial of his motion for a new trial. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Camacho arrived at Miami International Airport on May 12, 1991, from Cali, Colombia. Upon his arrival, Camacho presented himself to a Customs inspector for examination and clearance. During the Customs inspection, the inspector examined some place mats that Camacho declared he had purchased in Colombia. The inspector noticed that the place mats were hand-painted with tropical scenes and exuded a strong chemical odor. Upon closer examination, the inspector noticed that the mats were a little "sticky" and "gooey." (R.2 at 11, 26.) Having heard that cocaine previously had been smuggled into the country in place mats, the inspector decided to scrape the back of one of the place mats and perform a field test on the substance. The substance tested positive for cocaine.

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

Camacho was arrested and charged with (1) possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (2) importing cocaine into the United States in violation of 21 U.S.C. § 952(a). Camacho was tried and found guilty on both counts.

At trial, a forensic chemist testified that the cocaine-laden mats weighed 3.378 kilograms, of which 34 percent was pure cocaine base. Thus, he concluded that the cocaine base weighed 1.148 kilograms. At the sentencing hearing, the defense presented a witness who testified that the cocaine base contained in the mats was not crack and was not a smokable form of cocaine. The cocaine base contained in the mats would have to be converted into crack. The defense argued that for purposes of the sentencing guidelines, "cocaine base" meant "crack," and because the substance contained in the mats was not crack, it should, for sentencing purposes, be treated as cocaine hydrochloride rather than cocaine base.[1]

The district court held that, although the substance may not have been crack, the substance was cocaine base within the meaning of the sentencing guidelines. Pursuant to United States Sentencing Guidelines (USSG) § 2D1.1(c), the court found the base offense level to be 36, and sentenced Camacho to 188 months imprisonment. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c) (Nov. 1991).

After sentencing, Camacho, acting pro se, moved for a new trial. Camacho asserted several grounds for the motion, one of which was that Camacho's attorney, Miguel Caridad, forbade him from testifying on his own behalf at trial, in violation of the Sixth Amendment. The court held an evidentiary

hearing on Camacho's post-trial motion. However, the hearing only addressed whether Caridad denied Camacho his right to testify on his own behalf. At the hearing, Camacho presented two witnesses: Blanca Linacero, Camacho's sister; and Adriana Caceres, Camacho's girlfriend and a witness at the trial. Camacho also testified on his own behalf at this hearing. The Government presented one witness—Caridad. Caridad testified that he had "recommended [to Camacho] that [Camacho] strongly consider not testifying...."[2] Caridad maintained that this was merely a recommendation. According to Caridad, he made it clear to Camacho that the final decision about whether to testify was Camacho's, and that Camacho actually made that decision.

Camacho initially testified that Caridad "did not allow [Camacho] to take the witness stand and testify in [his] own defense by telling [him] that it was not necessary for [him] to testify." (R.4 at 51.) Camacho also testified that Caridad told him that he did not want him to take the witness stand "and that's different from just giving me legal advice against testifying." *Id.* at 52. Finally, the court questioned Camacho directly. In response to those questions, Camacho testified that Caridad never advised him that he was merely recommending that he not take the stand, and never told him that he had the right to take the stand notwithstanding Caridad's opinion.

The district court found Caridad's testimony more credible, and denied Camacho's motion for a new trial.

## II. ISSUES ON APPEAL

The first issue is whether the district court erred in determining that the substance in

1. The base offense level for possessing with the intent to distribute or importing 1.148 kilograms of cocaine is 26, providing a guideline range of 63 to 78 months imprisonment in criminal history category I. By comparison, the base offense level for possessing with the intent to distribute or importing 1.148 kilograms of cocaine base is 36, providing a guideline range of 188 to 235 months in criminal history category I. United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c) (Nov. 1991). When determining Camacho's sentence, the district court placed Camacho in criminal history category I.

2. (R.4 at 44.) Caridad made this recommendation because he had another witness who he believed "would ... testif[y] and did testify as to virtually everything that Mr. Camacho, himself, could have said had he been a witness...." *Id.* Moreover, Caridad felt that Camacho's demeanor would not be the best in front of the jury. Finally, in the event Camacho were convicted, Caridad felt that if Camacho had testified he might "be exposed to a two level upward adjustment [in sentencing] for obstruction...." *Id.*

Camacho's place mats constituted "cocaine base" for the purpose of sentencing Camacho pursuant to USSG § 2D1.1(c). The second issue is whether the district court erred in denying Camacho's motion for a new trial based on Camacho's claim of ineffective assistance of counsel.

## III. STANDARDS OF REVIEW

■ The district court's interpretation of the United States Sentencing Guidelines is subject to de novo review. *United States v. Rodriguez,* 980 F.2d 1375, 1377 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993). On the ineffective assistance of counsel claim, we " 'defer to the district court's findings of fact absent a clearly erroneous determination but apply our own judgment as to whether the conduct determined by these facts constitutes ineffective assistance of counsel.' " *United States v. Teague,* 953 F.2d 1525, 1534–35 (11th Cir.) (quoting *Wiley v. Wainwright,* 793 F.2d 1190, 1193 (11th Cir.1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

## IV. DISCUSSION

### A. *Sentencing Guidelines Issue*

On May 1, 1992, the district court sentenced Camacho to 188 months imprisonment, holding that the illegal substance involved in the case, although not crack, was cocaine base for purposes of sentencing because it was scientifically classified as cocaine base. Camacho had been found guilty of possessing 1.148 kilograms of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and importing cocaine into the United States in violation of 21 U.S.C. § 952(a). Under the sentencing guidelines, the base offense level for these crimes if the illegal substance is considered cocaine hydrochloride is 26, providing a guideline range of 63 to 78 months imprisonment in criminal history category I. By comparison, the base offense level for these crimes if the illegal substance is considered cocaine base is 36, providing a guideline range of 188 to 235 months. USSG § 2D1.1(c).

The issue here is whether, at the time the district court sentenced Camacho, the court erred in classifying the illegal substance involved in the case as cocaine base, even though it was not crack. The Government contends that this court's decision in *United States v. Rodriguez,* 980 F.2d 1375 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993), governs this case. In *Rodriguez* we held that under USSG § 2D1.1(c) "cocaine base" includes all forms of cocaine base, not just crack cocaine. *Rodriguez,* 980 F.2d at 1378. However, Camacho contends that amendment 487 to the guidelines, which states that "cocaine base" for purposes of USSG § 2D1.1(c) means "crack," governs this case even though the amendment was adopted after Camacho was sentenced. *See* USSG App. C., amend. 487 (Nov. 1, 1993).

■ The confusion on this issue had been generated by the fact that there are different forms of cocaine base, only one of which is crack cocaine. It has been argued, however, that because the term "cocaine base" is commonly used interchangeably with the term "crack," Congress and the Sentencing Commission intended the term "cocaine base," as used in 21 U.S.C. § 960(b) and USSG § 2D1.1(c), to refer only to the "crack" form of cocaine base. *Rodriguez,* 980 F.2d at 1377. This court directly addressed this issue in *Rodriguez.* In *Rodriguez,* we held that Congress intended to use the scientific meaning of the term "cocaine base" in 21 U.S.C. § 960(b), and the Sentencing Commission intended that the same meaning apply to USSG § 2D1.1(c). *Rodriguez,* 980 F.2d at 1378. Because the scientific meaning of the term "cocaine base" includes all forms of "cocaine base" and not merely "crack," the district court correctly interpreted the sentencing guidelines in sentencing Camacho unless the amendment to the guidelines applies. *See id.*

Effective November 1, 1993, the Sentencing Commission amended USSG § 2D1.1(c). USSG App. C., amend. 487 (Nov. 1, 1993). The amendment states that for purposes of

§ 2D1.1(c), "cocaine base" means "crack."[3] Camacho argues that this amendment is a clarifying amendment and should be given retroactive effect. We disagree.

 Clarifying amendments are amendments to the commentary of the sentencing guidelines, and are considered by this court in interpreting the guidelines, even when the defendant was sentenced before the effective date of the amendments.[4] However, the amendment in this case, amendment 487, is not a clarifying amendment to the commentary; it is an amendment to the text of the sentencing guidelines. *United States v. Munoz–Realpe*, 21 F.3d 375, 378 (11th Cir.1994). When adopting amendments to the guidelines, the Sentencing Commission publishes a list of those amendments which the Sentencing Commission intends to be effective retroactively. *See* USSG § 1B1.10. The list of retroactive amendments appears in USSG § 1B1.10(d). Because amendment 487 to the guidelines is not listed in that section, it is not given retroactive effect. *See id.* Therefore, the amendment cannot be applied retroactively to reduce the sentence the district court imposed in this case.

 The sentencing court must employ the guidelines in effect at the time the sentencing hearing is held. *United States v. Marin*, 916 F.2d 1536, 1538 (11th Cir.1990). Because *Rodriguez*, 980 F.2d at 1378, held that the definition of cocaine base in the guidelines included all forms of cocaine base, the district court complied with the guidelines in effect at the time Camacho was sentenced. The amendment did not take effect until November 1993, more than a year after the district court sentenced Camacho; therefore, the amendment is inapplicable to this case.

Camacho also argues that this court's recent decision in *Munoz–Realpe* mandates applying the amendment retroactively. We disagree. In *Munoz–Realpe*, this court specifically stated that we were not deciding whether the amendment was retroactive. *Munoz–Realpe*, 21 F.3d at 377 n. 5. In *Munoz–Realpe*, the cocaine base at issue was in liquid form. The district court held that "cocaine base" did not include cocaine base in liquid form, and sentenced the defendant accordingly. *Id.* at 376. The Government appealed in light of our subsequent decision in *Rodriguez* holding that "cocaine base" included all forms of cocaine base. *Id.* at 377. Although the district court sentence was inconsistent with *Rodriguez*, we did not remand for resentencing.[5] We held that any resentencing would have to employ the amended definition of "cocaine base" because the amendment had already taken effect. *Munoz–Realpe*, 21 F.3d at 377 n. 5.

Our decision today is not contrary to *Munoz–Realpe*. In the instant case, the sentence imposed by the district court was consistent with *Rodriguez*. Unlike the defendant in *Munoz–Realpe*, Camacho need not be resentenced. Therefore, the holding in *Munoz–Realpe*, requiring that effective guideline amendments be applied at resentencing, is inapplicable to the instant case. We find no error in the imposition of sentence in this case.

### B. *Ineffective Assistance of Counsel*

Camacho raises three grounds for his ineffective assistance of counsel claim: (1) Defense counsel refused to allow Camacho to be consulted regarding the selection of jurors; (2) Defense counsel failed to make objections at critical times during the trial; and (3) Defense counsel refused to allow Camacho to

---

**3.** USSG App. C., amend. 487 (Nov. 1, 1993). The amendment reads, in part:

 Section 2D1.1(c) is amended in the notes following the Drug Quantity Table by inserting the following additional paragraph as the third paragraph.

 " 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form."

*Id.*

**4.** *United States v. Howard*, 923 F.2d 1500, 1504 (11th Cir.1991). However, a clarifying amendment will not be applied retroactively if it would subject a defendant to an increased sentence. *See id.* n. 5.

**5.** *Munoz–Realpe*, 21 F.3d at 377. However, we vacated a portion of Munoz–Realpe's sentence and remanded on another ground. *Id.* at 380.

exercise his right to testify. Camacho initially raised these claims in a post-trial motion. However, the district court only held an evidentiary hearing on the issue of defense counsel's refusal to allow Camacho to testify.

■ Generally, we do not consider claims of ineffective assistance of counsel on direct appeal, because there usually has been insufficient opportunity to develop the record regarding the merits of these claims. *United States v. Andrews,* 953 F.2d 1312, 1327 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 3007, 120 L.Ed.2d 882, *and cert. denied,* — U.S. —, 112 S.Ct. 3008, 120 L.Ed.2d 882, *and cert. denied,* — U.S. —, 112 S.Ct. 3048, 120 L.Ed.2d 915 (1992). We will, however, consider an ineffective assistance of counsel claim on direct appeal if the record is sufficiently developed. *Id.* Because there is insufficient evidence in the record regarding the claims based on jury selection and defense counsel objections, we will not address those claims. Such claims may be resolved in a 28 U.S.C. § 2255 proceeding, where an evidentiary hearing may be held. *Andrews,* 953 F.2d at 1327. However, the district court's evidentiary hearing on Camacho's claim that Caridad refused to allow him to testify provides this court with sufficient development of the record to review this claim.[6]

■ The defendant in a criminal case has a fundamental constitutional right to testify in his own behalf at trial. *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). This right cannot be waived by defense counsel. *Id.* Because defense counsel is primarily responsible for advising the defendant of his right to testify, thereby ensuring the protection of that right, the appropriate vehicle for claims alleging that defense counsel violated the defendant's right to testify is a claim of ineffective assistance of counsel. *Id.* at 1534.

■ In the instant case, the district court made specific findings of fact after an evidentiary hearing on the issue. Specifically, after hearing four witnesses testify, the court found the testimony of Camacho's trial counsel, Miguel Caridad, to be most credible. Caridad testified that he had advised Camacho not to testify, but had made it clear to Camacho that the final decision about whether to testify was Camacho's. Caridad also testified that Camacho had actually made the final decision not to testify. After reviewing the record, we hold that these findings are not clearly erroneous.

■ To examine a claim of ineffective assistance of counsel, we apply the test set by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Teague,* 953 F.2d at 1534. *Strickland* provides a two-prong test that a defendant must satisfy to prevail on a claim for ineffective assistance of counsel. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The defendant must prove that (1) counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* at 687–88, 104 S.Ct. at 2064–65; *see Teague,* 953 F.2d at 1534.

Counsel's performance is deemed deficient if "counsel refused to accept the defendant's decision to testify and would not call him to the stand . . . . Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant," defense counsel's performance would be deemed deficient. *Teague,* 953 F.2d at 1534. In the instant case, Caridad testified that he informed Camacho of his right to testify, recommended against it, but informed Camacho that the final decision was Camacho's. According to Caridad, Camacho made the final decision not to testify. Under these facts, counsel's performance was not deficient, and Camacho has failed to meet the first prong of the *Strickland* test. Because Camacho has not established the first prong of the *Strickland* test, we need not address the second prong— whether deficient performance of counsel prejudiced Camacho's defense.

---

**6.** We do not hold that an evidentiary hearing is required for us to review an ineffective assistance of counsel claim on direct appeal. If there is sufficient evidence in the trial record regarding the claim, we may hear the claim absent a post-trial evidentiary hearing. *See Andrews,* 953 F.2d at 1327.

## CONCLUSION

We find no error in the imposition of sentence. Additionally, we find meritless Camacho's ineffective assistance of counsel claim grounded upon the assertion that his counsel refused to allow him to testify.

AFFIRMED.