[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2005
THOMAS K. KAHN
CLERK

No. 04-15248
Non-Argument Calendar

_____

D.C. Docket No. 03-00343-CR-J-32-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GINO VELEZ SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 15, 2005)**

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Gino Velez Scott appeals various issues related to his conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. We address each issue in turn, and affirm his conviction.

## I. DISCUSSION

A.    *Ineffective assistance of counsel*

Scott, represented by new counsel on appeal, argues his trial counsel was ineffective, because neither of his attorneys investigated the background of the Government's confidential informant. Scott contends at a minimum, his attorneys at trial should have investigated Freddy Pena's previous convictions to determine if his credibility could have been attacked at trial. Accordingly, Scott asserts, he was denied his Sixth Amendment right to effective assistance of counsel.

"Generally, claims of ineffective assistance of counsel are not considered for the first time on direct appeal." *United States v. Tyndale*, 209 F.3d 1292, 1294 (11th Cir. 2000). However, we may consider an ineffective-assistance claim on direct appeal, even absent a post-trial hearing, if there is sufficient evidence in the trial record regarding the claim. *United States v. Camacho*, 40 F.3d 349, 355 n.6 (11th Cir. 1994).

There is no evidence in the record bearing on the merits of Scott's allegations of ineffective assistance of counsel. Because there is insufficient evidence in the record regarding Scott's ineffective assistance of counsel claim, we decline to address this claim.

B.    *Continuance*

Scott next argues the Government should have disclosed sooner than five days before the trial (1) the name of the paid confidential informant, Pena, (2) a description of his criminal history, and (3) the names of the numerous cases in which Pena had been involved so that defense counsel could investigate Pena's background. Accordingly, Scott asserts, the trial court committed reversible error by failing to grant a continuance so defense counsel could obtain further information regarding Pena.

As an initial matter, Scott states in his brief that, "[a]lthough the trial court ruled that there was no *Brady* or *Giglio* violation for the lateness in providing scant information [about Pena] five days prior to trial, [he] disagree[s]." He does not, however, actually raise a claim under *Brady v. Maryland*, 83 S. Ct. 1194, 1196–97 (1963) (stating the government is obligated to produce evidence that is materially favorable to the defendant, either as substantive or impeachment evidence), or *Giglio v. United States*, 92 S. Ct. 763, 766 (1972) (holding the

3

"deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with"due process), in the instant appeal. *See* Fed. R. App. P. 28(a)(9) (requiring appellant to state "contentions and reasons for them, with citations to authorities and parts of the record on which the appellant relies"). Accordingly, the limited issue before us on appeal is whether the district court erred by failing to grant a continuance.

Generally, we review the district court's denial of a trial continuance for abuse of discretion. *United States v. Bowe*, 221 F.3d 1183, 1189 (11th Cir. 2000). In this case, however, Scott did not request a continuance in the district court. Accordingly, we review his argument only for plain error. *See United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001).

Under plain error review, an appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 122 S. Ct. 1781, 1785 (2002). (internal quotations and citations omitted).

Because Scott did not request a continuance, it was not plain error for the district court to fail to grant such a continuance. Scott has not cited any authority indicating that a district court is obligated to grant a continuance *sua sponte* when the government fulfills its obligations under *Brady* and *Giglio*. Accordingly, any error that the district court made by not *sua sponte* granting a continuance was not error that was "plain," because such an error was not "obvious or clear under current law." *United States v. Candelario*, 240 F.3d 1300, 1309 (11th Cir. 2001). Furthermore, Scott has failed to demonstrate how his substantial rights were affected by the court's failure to grant a continuance, *see Cotton*, 122 S. Ct. at 1785, as he has not explained how, with the benefit of additional time, he could have impeached Pena's testimony, nor has he identified any information about Pena that would have changed the outcome of his trial had he learned the information sooner. Accordingly, the district court did not plainly err in failing to grant a continuance *sua sponte*.

C. *Due process*

Scott next argues that, during argument before the district court regarding the admissibility of Scott's bank records, the Government misrepresented to the court that the money Scott withdrew from his bank on June 18 , 2004, was given to Jose Augustine Tamayo, Scott's coconspirator. Scott contends this

misstatement implied he and his coconspirator were together when the certificates of deposit (CDs) were cashed, "thus creating the false nexus between monies withdrawn and those used for the purchase of narcotics on October 21, 2004." Scott also maintains the Government, at the hearing regarding his motion *in limine*, willfully omitted the fact that one CD bore the name Jose Adrian Tamayo, who was believed to be related to Jose Augustine Tamayo, the coconspirator and witness in this case.

Scott notes that Pam Yeager, a bank representative, later testified (1) Jose Augustine Tamayo did not have an account at the bank, and (2) Jose Adrian Tamayo's name was on one of the CDs cashed by Scott. Scott contends the purpose of this testimony was to show that Jose Augustine Tamayo, the witness in this case, did not have access to large sums of money, and therefore, Scott must have given him the funds to purchase the drugs. Scott appears to imply that, had the Government clarified that Jose Adrian Tamayo was an account-holder at First State Bank and named on one of the CDs, the court could have concluded this relative of coconspirator Jose Augustine Tamayo gave him the funds for the transaction rather than Scott.

Scott maintains by submitting false information and creating this false impression during the hearing regarding his motion *in limine*, the Government

violated his due process rights under both *Brady*, 83 S. Ct. 1194, and *Alcorta v. Texas*, 78 S. Ct. 103, 105 (1957) (holding due process is violated if a prosecutor fails to correct testimony he knows to be false). Accordingly, he asserts his entitlement to a new trial.

Although Scott challenged the admission of his banking records on evidentiary grounds, he did not assert in the district court the prosecutor had engaged in misconduct, depriving him of his due process rights. Accordingly, we review this argument for plain error. *See United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000) (reviewing sentencing challenge for plain error because the defendant had not raised in district court "the specific issues she raises now").

A review of the transcript regarding Scott's motion *in limine* reveals that, at one point, the prosecutor apparently misstated that, when the CDs were cashed, the funds were given to "Mr. Tamayo," Scott's coconspirator. Subsequently, the prosecutor stated, "four months later Mr. Tamayo [was] given, by Mr. Scott . . . approximately $54,000." The prosecutor did not detail the ownership of the CDs during the hearing. Scott, however, has not demonstrated how his substantial rights were affected by the prosecutor's misstatement or failure to detail the CD ownership, as there is no indication in the record that either the misstatement or

7

failure to detail was the sole reason the district court admitted the evidence. Rather, the district court listed several reasons for its decision to admit the banking records, none of which included the ownership of the CD or the prosecutor's statement regarding Scott's withdrawal of funds.

D.     *Irrelevance/Prejudice*

Scott next argues the district court erred in admitting his banking records because of the "slim showing by the [G]overnment regarding the nexus between [his] withdrawal four months prior to the arrest of Tamayo."  Scott contends there was no evidence to connect his withdrawal of funds in June 2003 with funds seized from Tamayo in October 2003.  Scott asserts his banking evidence was, thus, irrelevant.  He further contends that, even if the evidence was relevant, its probative value was substantially outweighed by unfair prejudice to Scott, as the jury convicted him solely because the Government made it appear he had sufficient funds to purchase the narcotics.

When a party properly preserves its claim, we review the district court's ruling on admission of evidence for abuse of discretion.  *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).  We will reverse an erroneous evidentiary ruling "only if the resulting error was not harmless."  *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999), *corrected by* 194 F.3d 1186 (11th Cir. 1999).

8

The district court did not abuse its discretion in admitting the banking records. First, the banking records were relevant, because the records linked Scott to the funds used to purchase the cocaine. As the Government noted: (1) First State Bank was a small bank with branches in the Valdosta area only; (2) Scott withdrew over $200,000 in cash from First State Bank, and the funds seized from Tamayo were contained in First State Bank envelopes; and (3) Scott withdrew the money in $100 and $50 bills, and the money seized from Tamayo was also $100 and $50 bills. Furthermore, although the four-month lapse between Scott's withdrawal of the funds and the drug transaction may have diminished the probative value of the records, the probative value was not substantially outweighed by unfair prejudice to Scott. Accordingly, the district court did not abuse its discretion in admitting the records, and we affirm as to this issue.

E.    *Sufficiency of the evidence*

Finally, Scott contends the Government failed to present credible evidence that a conspiracy existed. Scott asserts "having an interest in a matter does not rise to the legal definition of conspiracy." He stresses, according to Tamayo's testimony, none of the parties reached an agreement regarding the sale of the cocaine on October 2, when Tamayo initially contacted Scott regarding the sale, on October 14, when Tamayo, Minolo, and Pena allegedly met him in Jennings,

9

Florida, or by October 21, after Scott and Tamayo remained in contact regarding the proposed transaction. Scott further argues he and Tamayo had a buy-sell arrangement rather than a partnership to distribute cocaine. Scott states that, according to Tamayo's testimony: (1) paid Government informants approached Tamayo regarding the sale of the drugs; (2) Tamayo acted as an agent for the informants, inducing third parties to purchase the drugs, because he needed money; and (3) Tamayo never reached an agreement with Scott to possess cocaine with the intent to distribute as charged in the indictment.

"We review the sufficiency of the evidence to support a conviction de novo, viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). The district court's denial of a motion for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude the evidence establishes the defendant is guilty beyond a reasonable doubt. *Id.* The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented during trial, and the court must accept the jury's reasonable inferences and credibility determinations. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir. 1984).

To support a conspiracy conviction under section 846, the government must prove: "(1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *See United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir.1998). The existence of the conspiracy and the defendant's participation in it may be established through circumstantial evidence. *Id.* For the conspiracy to exist, an agreement to commit some other crime beyond the crime constituted by the agreement itself must be made. *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). Thus, in a drug case, "[w]here the buyer's purpose is merely to buy, and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993) (quoting *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir.1987). However, an agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser. *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984).

In light of the evidence presented during the trial, sufficient evidence supports the jury's conclusion that Scott knowingly and voluntarily joined an agreement to possess with the intent to distribute five kilograms or more of

11

cocaine, and the district court did not err in denying Scott's motion for a judgment of acquittal. Testimony from Agents Jack Lunsford and Mark Baughman, Pena, and Tamayo identified Scott as the buyer who was funding Tamayo's transaction, involving 10 kilograms of cocaine, with Pena and Minolo.

Furthermore, Pena testified he and Scott discussed the possibility of future transactions, and Scott told him he would be willing to purchase drugs from Pena on a weekly basis because he supplied cocaine to sufficient customers to warrant such frequent transactions. Agent Lunsford testified that, after Scott was arrested, he told authorities he was a "big guy" in the hierarchy of drug distribution. Tamayo testified he and Scott had engaged in multiple transactions involving the sale of drugs over a period of years. Lastly, Tamayo indicated that, after Scott agreed to the transaction, Scott gave Tamayo $54,000 with the understanding they would purchase 10 kilograms of cocaine, paying up front for 3 kilograms and receiving 7 kilograms on consignment. All of the foregoing testimony indicates there was a continuing relationship between Tamayo and Scott, as well as the contemplation of a continuing relationship between Pena and Scott. Therefore, the evidence demonstrates the existence of a conspiracy agreement rather than an isolated buy-sell agreement. *Bascaro*, 742 F.2d at 1359. Finally, Scott's contention he and Tamayo never reached an agreement fails, because, according to

12

Tamayo's testimony, Scott ultimately agreed to the transaction.  Accordingly, sufficient evidence supports Scott's conviction.

## II.  CONCLUSION

We decline to address Scott's ineffective assistance of counsel claim. We conclude the district court did not err in failing to grant a continuance, or in admitting Scott's bank records.  Additionally, sufficient evidence supports Scott's conviction.

**AFFIRMED.**