[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14591
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00007-RWS-JCF-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM R. BEAMON, JR.,
a.k.a. Rusty Beamon,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 2, 2017)


Before TJOFLAT, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

William "Rusty" Beamon, Jr. appeals his convictions and 42-month total sentence for five counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and the denial of his motion for a new trial.  Beamon asserts five issues on appeal, which we address in turn.  After review, we affirm Beamon's convictions and sentence.

## I.  DISCUSSION

### A.  *Sufficiency of the evidence*

Beamon first argues his convictions should be reversed because the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt.  He contends that because he was acquitted of causing Appalachian Community Bank (ACB) to issue a loan to his wife in Count 2, there was insufficient evidence to sustain his convictions on Counts 1 and 3, which related to the same property on Vickery Woods Court (Vickery Woods).  Beamon contends that he made no misrepresentations to David Smith, who leased Vickery Woods from him.  He further asserts that there were no misrepresentations in Counts 4, 5, or 6, relating to a house on Poplar Street, because Tracy Newton, ACB's president, knew of and approved the transactions.

Each count arose under 18 U.S.C. § 1344, which prohibits anyone from knowingly executing, or attempting to execute, a scheme or artifice to: (1) "defraud a financial institution;" or (2) "obtain any of the moneys, funds,

2

credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. When an indictment charges both clauses of § 1344, and the jury instructions do the same, then the defendant's conviction may be sustained on either theory. *United States v. Goldsmith*, 109 F.3d 714, 715-16 (11th Cir. 1997).

Viewing all evidence and drawing all inferences in favor of the verdict, a reasonable jury could have found Beamon guilty of bank fraud on each of the five counts beyond a reasonable doubt. *See United States v. Isaacson*, 752 F.3d 1291, 1303 (11th Cir. 2014) (reviewing *de novo* whether the evidence was sufficient to sustain a conviction, and viewing all evidence and drawing all inferences in favor of the verdict); *United States v. Grzybowicz*, 747 F.3d 1296, 1304 (11th Cir. 2014) (stating we will not overturn a jury's verdict so long as "any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt" (quotation omitted)). First, to the extent Beamon argues he did not misrepresent anything to Smith, that argument is misplaced because Beamon was charged and convicted of defrauding ACB, not Smith, and what he conveyed to Smith is not dispositive for the question of whether he defrauded the bank. *See* 18 U.S.C. § 1344. Rather, the issue in Counts 1 and 3 is whether Beamon fraudulently received and deposited Smith's security

3

deposit and rent into his own account when they were constructively the bank's property because they arose from his wrongful scheme.

Further, to the extent Beamon argues the Government failed to show he misrepresented anything or had the necessary intent to defraud the bank in Counts 4, 5, and 6 because Newton allegedly knew of and approved his transactions, Beamon made those arguments at trial without taking the witness stand and the jury was entitled to determine whether it believed those theories. *See United States v. Hamaker*, 455 F.3d 1316, 1334 (11th Cir. 2006) (stating the jury is entitled to disbelieve dubious explanations for conduct). The only evidence Beamon provided that Newton knew of the transactions was (1) Newton signed off on the loan to Maria Beamon and credit card application for Beamon Properties; and (2) various employees of the bank trusted Newton. On the other hand, the Government provided evidence that Beamon: (1) violated various written bank policies about conflicts of interest, self-dealing, and disclosure to the board of directors; (2) asked his stepdaughter to sign all documents relating to Newmon Properties; (3) asked Dewey Cardd to change Manuel Garcia's cash payment for Poplar Street into three cashier's checks under $10,000, which avoided reporting requirements; (4) signed a contract for Poplar Street with Garcia and Judith Mejorada-Cruz as a representative of the bank, but then bought the property and sold it to them himself; (5) signed and represented himself as the owner of Vickery

4

Woods when renting to Smith; (6) deposited all money related to the transactions at banks other than ACB; and (7) as Newmon Properties, used a cashier's check that did not contain his signature to pay ACB rather than a personal check that would contain his signature. The jury was entitled to find the Government's witnesses and evidence credible and to disbelieve Beamon's explanations for his conduct. *See United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009) (explaining credibility questions are for the jury, and we assume the jury answered them in a manner that supports the jury's verdicts); *Hamaker*, 455 F.3d at 1334. Viewing all evidence and drawing all inferences in favor of the verdict, Beamon's evidence is not so strong as to preclude the jury from finding Beamon guilty beyond a reasonable doubt.

Beamon's argument the rent payment in Count 3 was not bank fraud because it was after Beamon bought the house is also unavailing. Section 1344 applies to the execution of a scheme to obtain money, funds, credits, assets, securities, or other property owned by a bank through false pretenses, representations, or promises. 18 U.S.C. § 1344(2). A scheme is executed by the movement of money, funds, or other assets from the institution, and this movement of money from the bank completes the execution of the scheme. *United States v. Adkinson*, 158 F.3d 1147, 1159 (11th Cir. 1998). Here, the money that Beamon received for rent otherwise would have and should have gone to the bank because he acquired the

5

house through bank fraud.  Although Beamon did not deposit the rent check until after he owned the house, his ownership was fraudulent, and he did not complete the execution of the scheme to obtain money and property owned by the bank until he deposited the rent.  Thus, the Government's evidence was sufficient to sustain a conviction because, viewing all evidence and drawing all inferences in favor of the verdict, a reasonable jury could have found Beamon guilty of bank fraud on each of the five counts.

## B.  New trial

Second, Beamon asserts the district court clearly erred when it did not grant him a new trial given evidence adduced after trial that he suffered from impaired executive functioning.  We review the district court's denial of a motion for a new trial based on newly-discovered evidence for an abuse of discretion.  *United States v. Fernandez*, 136 F.3d 1434, 1438 (11th Cir. 1998).

In order to prevail on a motion for a new trial based on newly-discovered evidence, the defendant must show that: "(1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result."  *United States v. Lee*, 68 F.3d 1267, 1273 (11th Cir. 1995).  A defendant's failure to show any one of the factors is fatal to his motion for a new

trial. *United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995). Psychiatric evidence offered to negate specific intent is admissible if it focuses on the defendant's specific state of mind at the time of the charged offense. *United States v. Cameron*, 907 F.2d 1051, 1067-68 (11th Cir. 1990).

The district court did not abuse its discretion when it denied Beamon's motion for a new trial based on newly-discovered evidence because the evidence was not material. As the district court determined, Dr. Kristine Lokken's neuropsychological findings were new evidence about Beamon's mental state in April 2015, but were not newly-discovered evidence of his mental state in 2009. Although Lokken testified she did not think Beamon's impaired executive functioning arose from the neurological event he suffered in February 2015, she also testified that she could not know whether the impairment existed before that event without previous neuropsychological data. She also testified Beamon may have been suffering small events both before and after the February 2015 event which could have affected his frontal lobe, but she could not say for sure when they began without previous neuropsychological data. Further, in response to the court' concern about the amount of success Beamon had achieved, despite any possible condition, Lokken testified that it was "hard to know exactly, you know, whether the impairment came in, how severe the impairment was, is it worsening, you know, with the [neurological events]. But I think that's you know, a very

7

valid issue."  Lokken's testimony showed she could not speak to Beamon's mental state in 2009 because she did not have data from that time and could not definitively determine when and how his impairment developed.  Finally, Lokken stated she could not speak to Beamon's intent.  Thus, similar to psychiatric evidence, the evidence would have been inadmissible to the extent it could not be probative of and material to Beamon's specific intent at the time of the offense.  *See Cameron*, 907 F.2d at 1067-68.  Because the evidence Beamon presented was immaterial, the district court did not abuse its discretion in denying his motion for a new trial.

## C.  Loss calculation

Third, Beamon asserts the district court incorrectly calculated the advisory guideline range because the district court's loss calculation included both properties that he did not buy from the bank and properties where the loss was speculative.  We review the district court's determination of loss for clear error.  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).  When a defendant challenges one of the factual bases of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence.  *See United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).  The Guidelines do not require a precise determination of loss, and a court "need only make a reasonable estimate of the loss, given the available information."  *Id.*

(quotation omitted). District courts are in a unique position to evaluate the evidence relevant to a loss determination, and thus, their determinations are entitled to appropriate deference. *United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011).

The district court is to include and evaluate all relevant conduct in calculating a defendant's offense level, not merely the charged conduct. U.S.S.G. § 1B1.3. Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a). For two or more offenses to constitute part of a common scheme or plan, and therefore part of the defendant's relevant conduct in a case such as this one, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar *modus operandi*. *Id.* § 1B1.3(a)(2) and comment. (n.9(B)) (2014).

At the time of Beamon's sentencing, the Sentencing Guidelines provided for a 14-level increase where the total loss amount was greater than $400,000 but less

9

than $1,000,000.  U.S.S.G. § 2B1.1(b)(1)(H) (2014).[1]  Where a fraud involves a

mortgage loan and the property has not been disposed of, the court uses the fair

market value of the collateral as of the date on which the guilt of the defendant was

established.  *Id.* § 2B1.1 comment. (n.3(E)(iii)) (2014).  There is a rebuttable

presumption that the most recent tax assessment value of the collateral is a

reasonable estimate of the fair market value.  *Id.*

The district court did not clearly err in its inclusion of the Village Terrace

Court, Mica Creek, Tails Creek, and Beachwood properties as relevant conduct or

in its calculations of the loss value as to each property.  First, Village Terrace

Court qualified as relevant conduct because the victim was the same as in the

charged conduct, the purpose of the scheme was the same, and the conduct

followed a similar *modus operandi*.  The district court's reliance on the

presentence investigation report's loss valuation was not clear error because the

calculation was reasonable given the information available and not speculative.

*See Barrington*, 648 F.3d at 1197.

---

[1]  After Beamon's sentencing, the loss amounts in § 2B1.1 were amended, and a 14-level enhancement now corresponds to a loss of greater than $550,000 but less than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H).  We apply the version of the Sentencing Guidelines in effect on the date of the sentencing hearing.  *United States v. Steele*, 178 F.3d 1230, 1237 (11th Cir. 1999). Amendments that clarify the Guidelines, however, should be considered on appeal regardless of the date of sentencing.  *See United States v. Scroggins*, 880 F.2d 1204, 1215 (11th Cir. 1989). Generally, amendments to the commentary are clarifying, but amendments to the text are substantive.  *United States v. Camacho*, 40 F.3d 349, 354 (11th Cir. 1994), *overruled on other grounds by United States v. Sanchez*, 269 F.3d 1250, 1277 (11th Cir. 2001) (*en banc*).

Mica Creek qualified as relevant conduct because the victim was the same and the conduct was similar to that in Counts 1 and 3. Although it is unclear if ACB lost anything in this transaction, the inclusion of the $5,000 loss value is at most harmless error because even if the total loss value was reduced by $5,000, Beamon would still be well above the $400,000 threshold. *See* U.S.S.G. § 2B1.1(b)(1)(H) (2014); *Williams v. United States*, 503 U.S. 193, 203 (1992) (providing the harmless error standard applies to a Guidelines error and instructs that remand is appropriate unless, based on the record as a whole, the error did not affect the district court's selection of the sentence imposed).

Tails Creek qualified as relevant conduct because the victim was the same as in the charged conduct, the purpose of the scheme was the same, and the conduct followed a similar *modus operandi*. The district court did not clearly err in calculating the loss value because the calculation was reasonable given the information available and not speculative, and Beamon's own presentation of the facts invited any error because the court relied on his proffer to determine the loss amount.

Finally, Beachwood qualified as relevant conduct because, although Beamon did not purchase the property directly from the bank, he bought it through another shell company owned by Newton and Adam Teague and the conduct was

11

significantly similar to the charged scheme. Beamon does not separately challenge the calculated loss for Beachwood.

## D. Aggravating role

Beamon contends the district court erred when it enhanced his offense level for an aggravating role because no other person could be held criminally responsible for the offense and he did not organize or lead anyone.

To receive a role enhancement under § 3B1.1(c), the defendant must have been the organizer, leader, manager, or supervisor of one or more "participants." U.S.S.G. § 3B1.1, comment. (n.2). A "participant" is someone who is criminally responsible for the offense, but need not be convicted. *Id.* § 3B1.1, comment. (n.1). In distinguishing the level of enhancement, the court should consider various factors, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* § 3B1.1, comment. (n.4).

The district court did not clearly err when it applied the two-level role enhancement for being a manager or supervisor because Beamon exercised authority over Cardd several times, particularly during the Poplar Street transaction. *See United States v. Rendon*, 354 F.3d 1320, 1331 (11th Cir. 2003).

12

(reviewing the district court's determination of a defendant's role in the offense for clear error). Cardd worked on both closings for the Poplar Street flip, notarized documents that Beamon provided that had already been signed, and, at Beamon's request, converted the cash the buyers used to purchase Poplar Street into three cashier's checks, each under $10,000, which got Cardd fired from ACB. Based on these facts, the district court did not clearly err when it determined by a preponderance of the evidence that Cardd could have been held criminally responsible and thus was a participant. *See United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (stating the government carries the burden to prove the existence of an aggravating role by a preponderance of the evidence).

*E. Reasonableness*

Finally, Beamon asserts his sentence was substantively unreasonable in light of the 18 U.S.C. § 3553(a) factors because the court did not adequately consider some of the factors. We review the reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007).

The district court considered the § 3553(a) factors and imposed a substantively reasonable sentence. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010) (stating the party who challenges the sentence bears the burden to show that the sentence is unreasonable in light of the record and the § 3553(a) factor). First, the 42-month sentence was 15 months below the guideline range and

13

significantly below the 30-year statutory maximum sentence.  While neither of these facts is dispositive, both indicate that the sentence was substantively reasonable.  *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding the sentence was reasonable in part because it was well below the statutory maximum); *United States v. Hunt,* 526 F.3d 739, 746 (11th Cir. 2008) (explaining although we do not presume that a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable).  Further, at sentencing, the district court discussed several factors in detail, including the nature and circumstances of the offense, the characteristics of the defendant, the need to avoid sentencing disparities, and the need to deter criminal conduct.  *See* 18 U.S.C. § 3553(a).  The weight given to each of these factors, and the choice to weigh these factors higher than the others, is within the discretion of the district court.  *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

## II.  CONCLUSION

Sufficient evidence supported Beamon's convictions for bank fraud on all five counts.  Additionally, the district court did not abuse its discretion in denying Beamon's motion for a new trial.  As to Beamon's sentence, the district court did not clearly err in its loss calculation, or in imposing an aggravating role enhancement.  Lastly, Beamon's sentence is substantively reasonable.

**AFFIRMED.**